**FAIRMAC CORPORATION v.
ROBERTS et al.**

No. 790.

Municipal·Court of Appeals for the
District of Columbia.

Reargued June 30, 1949.

Decided July 12, 1949.

John J. Wilson, Washington, D. C.,
with whom Roger J. Whiteford, Washing-
ton, D. C., was on the brief, for peti-
tioner.

Benjamin C. Sigal, Washington, D. C.,
for respondents.

Ernest F. Williams, Washington, D. C.,
with whom Ruffin A. Brantley, Washing-
ton, D. C., was on the brief, for Robert
F. Cogswell, Administrator of Rent Con-
trol.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

This case is here on petition to review orders of the Administrator of Rent Control dismissing a landlord's petitions for increases in rent. The property involved is a part of what is known as McLean Gardens. This development, consisting of apartment buildings and residence halls or dormitories, was erected by Defense Homes Corporation and was first occupied in March 1943. Petitioner, present landlord, purchased the entire development from Defense Homes Corporation in 1947. Only the residence halls are involved here. They consist of nine three-story buildings, each containing about 132 rooms. Six buildings are occupied by women and three by men. The rooms are of the furnished non-housekeeping type, are largely of single occupancy, and are supplied with a limited type of hotel service.

A preliminary question is whether the review brought here on a single petition properly includes all the tenants. The proceedings were commenced by the filing of 1173 petitions with the Rent Administrator. Over five hundred of the tenants were represented by counsel appearing here for the respondents. The other tenants had no representation and took no part in the proceedings. There was a single hearing on all the petitions and although the Administrator issued an order on each petition, the orders were substantially identical and the proceedings were treated in the Administrator's office for practical purposes as one case. A single petition for review was filed here, but it specifically stated that it sought review of the orders in the 1173 cases and that a copy of the petition was being served upon each tenant. Under these circumstances we think the petition for review properly brings before us the orders in all the cases.

The requested increases in rents were sought on the basis that the existing rents are, "due to peculiar circumstances affecting said housing accommodations, substantially lower than the rent generally prevailing for comparable housing accommodations."[1] To support this claim of peculiar circumstances the landlord offered evidence that the buildings were erected by Defense Homes Corporation with funds supplied by Reconstruction Finance Corporation; that the purpose of the buildings was to supply housing accommodations to workers engaged directly in the war effort; and that a brochure issued by Defense Homes Corporation described McLean Gardens as "one of the country's outstanding residential communities," with "modest" rentals, and "available only to those who have come to Washington to engage directly in the war, effort." The present landlord's general manager, formerly supervisor of management of Defense Homes Corporation, testified that the original rent schedules, which are the existing schedules, were not fixed by Defense Homes Corporation with a view to obtaining a fair return on the investment, but were fixed to fit the pocketbooks of prospective tenants with comparatively modest earnings.

The examiner's findings, later approved by the Administrator, stated:

"5. That the petitioner has requested an adjustment of the maximum rent ceiling pertaining to this housing accommodation on the ground that due to peculiar circumstances the maximum rent ceiling now in effect is less than that for comparable housing accommodations basing such request on the original purpose of the Defense Homes Corporation in providing housing accommodations at a level commensurate with certain wage rates then in effect for the Federal Government. (See transcript of proceedings page 58.)

"6. That these facts do not constitute peculiar circumstances and no finding is therefor made as to whether or not the maximum rent ceiling now in effect is less than that of comparable housing accommodations in the District of Columbia."

The examiner actually made no findings of fact and merely concluded "these facts" do not constitute peculiar circumstances. No reasons for this conclusion were given and there is no administrative interpretation of peculiar circumstances by which we could assume the examiner was guid-

---

[1] See Code 1940, Supp. VI, § 45—1604 (a)

ed. We can only conclude that "these facts" refer to the landlord's evidence and that the examiner, accepting such evidence, ruled as a matter of law that it did not make out a case of peculiar circumstances within the meaning of the Rent Act.

The question of what constitutes peculiar circumstances, as that term is used in the District of Columbia Emergency Rent Act, has never been squarely before this Court, but in Bailey v. Maple, D.C.Mun.App., 63 A.2d 333, 335, we quoted with approval from Read v. Gerstenfeld, 72 W.L.R. '563, decided by a three-judge court of the Municipal Court, which formerly reviewed orders of the Rent Administrator, the following: " 'The phrase, "peculiar circumstances," as here used obviously means unusual or special circumstances which kept the landlord and tenant from bargaining freely.' "

The same general idea has been expressed in cases coming under the National Rent Act, 50 U.S.C.A.Appendix, § 901 et seq., it being said that peculiar circumstances are those which negate the existence of ordinary bargaining considerations, or are abnormal circumstances not generally present in a normal rental bargain. Expressed in the negative it is said that peculiar circumstances are lacking when the circumstances are the normal ones of bargaining between landlord and tenant, or, when the landlord is a free agent dealing in an open market. Rockcliffe Realty Corporation v. Bowles, Em.App., 151 F.2d 339; Kuskin & Rotberg, Inc., v. Porter, Em.App., 153 F.2d 1016; Longmoor Corporation v. Creedon, Em.App., 162 F.2d 747.

In the instant case the landlord was a defense agency[2] operating with funds obtained from another governmental agency. The buildings were erected for the benefit of a favored class of tenants, namely, war workers. Whether or not the testimony of the former employee

of Defense Homes Corporation be accepted as completely accurate, the purpose for which the buildings were erected and the circumstances under which they were rented indicate plainly that the profit motive existing in normal operations of this kind was absent here. The transaction was not one where the landlord intended to secure to itself the greatest possible economic benefit. In fixing the rents there were present factors which prevented a bargaining valuation of the property for rental purposes under the then existing market conditions. Cf. Northwood Apartments, Inc., v. Brown, Em.App., 137 F.2d 809; Bibb Mfg. Co. v. Bowles, Em.App., 140 F.2d 459. In our opinion the evidence established that present rentals were fixed under peculiar circumstances affecting the housing accommodations and the Administrator was in error in holding otherwise.

Whether as a result of those peculiar circumstances the rent ceilings are today substantially lower than the rent generally prevailing for comparable housing accommodations is a question to be decided by the Administrator.

After the foregoing was written the Supreme Court of the United States on June 13, 1949, rendered its decision in United States v. Wittek, 69 S.Ct. 1108, wherein it held that Bellevue Houses, a defense-housing project in the District of Columbia owned by the United States, was not and is not subject to the District of Columbia Emergency Rent Act. The Court there stated: "The issue before us does not turn upon what particular agency is operating the Bellevue Houses or the other Government-owned housing of the United States. The issue is whether the United States, through whatever agency it operates, is to be controlled in its rental policies by the District Administrator of Rent Control." Answering that issue the Court said "that Congress did not seek by the District of Columbia Emergency Rent Act to place Government-owned housing

---

2 Defense Homes Corporation was incorporated under the laws of the State of Maryland. By amendment to its charter provision was made that its entire capital stock should be held for the benefit of the United States. By additional amendment it was provided that the powers of the corporation should not be exercised or used "except for the sole purposes of the national security and defense and the successful prosecution of the war."

under a local rent administrator." Following that decision we heard reargument on the question of the effect of the Wittek decision on the present case.

When McLean Gardens were completed in 1943 Defense Homes Corporation, the then owner, voluntarily submitted the proposed rental schedules to the Rent Administrator who approved them. Those schedules have never been changed and this proceeding to adjust the rents under section 4(a) of the Act is based on the assumption that such approved schedules constitute established rent ceilings under the Act. However, if the holding in the Wittek case applies here, then so long as Defense Homes Corporation owned and operated McLean Gardens the Rent Administrator had no power to control its rental policies and his approval of the original rents was without legal effect. This raises the question whether this proceeding should have been one under section 2(1)(c) for the determination of an original ceiling instead of one under section 4(a) for the adjustment of a previously established ceiling.

The tenants argue that the Wittek decision is not applicable here for the reason that there are distinguishing features between the construction, ownership and operation of Bellevue Houses and McLean Gardens. Particular emphasis is laid on the statement of the Supreme Court that there was no evidence before it that the Rent Administrator had sought to exercise jurisdiction over the United States as a landlord of either low-rent housing or defense-housing, whereas the Administrator did assume, with the assent of Defense Homes Corporation, jurisdiction over all properties, including McLean Gardens, owned by Defense Housing Corporation in the District of Columbia.

We have concluded that it is not necessary to decide the effect of the Wittek case on the approval of the rents of McLean Gardens by the Administrator in 1943. Whether or not the property was subject to rent control at that time, it became subject to such control in 1947 when sold to a private owner, the present landlord. If the action of the Administrator in 1943 was of no effect, then the new owner in 1947 should have submitted rent schedules for approval. It did not do this but instead accepted the previously approved schedules as the legal rent ceilings. The landlord abided by those schedules and by this proceeding to adjust the rents under section 4(a) affirmatively recognized the already established rent ceilings. In view of the voluntary submission by Defense Homes Corporation to rent control, the assumption of jurisdiction by the Administrator, the acquiescence in that action by the present landlord, who on acquisition became immediately subject to rent control, it is our conclusion that the established rent ceilings were legal at least from the time of acquisition of the property by the present landlord and that the present proceedings for adjustment under section 4(a) were properly brought.

We may add that in our opinion the Wittek decision strengthens our conclusion that the rent ceilings here were established under peculiar circumstances affecting the housing accommodations within the meaning of section 4(a) of the Act.

The orders of the Administrator dismissing the petitions are set aside and the cause is remanded for further proceedings in accordance with this opinion.